UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Lisette R., o/b/o C.J.O.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Kilo Kijakazi,<br>　Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Civil No. 3:22-CV-00784-TOF<br><br><br><br><br>September 29, 2023 |

## RULING ON PENDING MOTIONS

The Plaintiff, Lisette R.,[1] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant") on behalf of C.J.O., her minor daughter, rejecting her application for children's Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. (Compl., ECF No. 1.)  She asks that "the Commissioner's final decision be reviewed and set aside and that the case be remanded for a new hearing and decision, modified, or reversed for a calculation of benefits, and for any other relief as the Court deems appropriate." (*Id.* at 2.)  The Commissioner has moved for an order affirming the decision.  (ECF No. 17.)

Having carefully considered the parties' submissions, and having carefully reviewed the entire, 1,065-page administrative record, the Court concludes that the Administrative Law Judge ("ALJ") committed no reversible legal error and that his decisions were supported by substantial evidence.  Accordingly, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF

---

[1]　Pursuant to the Court's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial, or as "the Plaintiff," throughout this opinion.  *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).  Her child will be identified by her initials, or as "the Claimant." *Id.*

1

No. 14) is **DENIED**; the Defendant's Motion to Affirm the Decision of the Commissioner (ECF No. 17) is **GRANTED**; and judgment will enter in the Commissioner's favor.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

In February of 2021, the Plaintiff filed an application for Title XVI SSI benefits on behalf of the Claimant. (R. 12, 147-56.) She alleged that the Claimant was disabled by post-traumatic stress disorder ("PTSD"), learning comprehension problems, anxiety attacks, and depression. (R. 68, 161-62, 188.) The Claimant's alleged impairments evidently stemmed from witnessing the death of her grandmother on November 20, 2016. (R. 17, 388.) About three months later, she began experiencing trauma symptoms including "not being able to sleep, inability to focus in class, and constant unwanted distressing thoughts of the incident." (*Id.*) About a year and a half after this tragic event, she began having panic attacks with "chest pains, heart racing, [and] inability to breathe" about two times per week. (R. 389, 398.) On or around October 7, 2020, she was diagnosed with PTSD, and later diagnosed with anxiety symptoms consistent with panic episodes, and insomnia. (R. 377, 387, 398-99, 1006.) Her treatment consisted principally of medication management and psychotherapy. (R. 383-85.) When her mother applied for SSI benefits on her behalf, she alleged a disability onset date of December 1, 2020. (R. 148.)

On March 24, 2021, the Social Security Administration ("SSA") found that the Claimant was "not disabled." (R. 50-56.) The SSA denied her claim on reconsideration on June 30, 2021. (R. 57-63.) The Plaintiff then requested a hearing before an ALJ (R. 82-84), and on December 1, 2021, Judge Eskunder Boyd held a hearing. (R. 29-49.) The Plaintiff's then-counsel, Gerald A. Palma, appeared on her behalf. (R. 29.)

On December 17, 2021, the ALJ issued an unfavorable decision. (R. 9-27.) As will be discussed below, ALJs are required to follow a three-step sequential evaluation process in

adjudicating children's Social Security claims (*see* discussion, Section II *infra*), and ALJ Boyd's written decision followed that format. At Step One of his analysis, he found that the Claimant had not engaged in substantial gainful activity since the application date of February 3, 2021. (R. 13.) At Step Two, he found that she suffers from the severe impairments of panic disorder and PTSD. (*Id.*) At Step Three, he considered her functional abilities in six categories, or "domains." Finding that the Claimant did not have a "severe" limitation in at least one domain, or a "marked" limitation in at least two domains, the ALJ concluded that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Specifically, he found that the Claimant had the following functional limitations with respect to the six applicable domains: (1) "less than a marked" limitation in acquiring and using information; (2) "less than a marked" limitation in attending and completing tasks; (3) "less than a marked" limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) a "marked" limitation in the ability to care for herself; and (6) no limitation in health and physical well-being. (R. 18-23.) In summary, he found that the Claimant had not been under a disability, as defined in the Social Security Act, from February 3, 2021, the date the application was filed, through December 17, 2021, the date of his decision. (R. 23-24.)

On February 10, 2022, the Plaintiff requested that the Appeals Council review the ALJ's decision. (R. 144-46.) On April 1, 2022, the Council found "no reason under our rules to review the [ALJ's] decision" and, therefore, denied the Plaintiff's request for review. (R. 1.) It added that if the Plaintiff wished to contest it, she could "ask for court review . . . by filing a civil action." (R. 2.)

The Plaintiff then filed this action on behalf of the Claimant on June 16, 2022. (Compl., ECF No. 1.) The Commissioner answered the complaint by filing the administrative record on August 2, 2022. (ECF No. 12; *see also* D. Conn. Standing Scheduling Order for Social Security Cases, ECF No. 4, at 2 (stating that the Commissioner's filing of the administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").) On October 3, 2022, the Plaintiff filed her motion for an order reversing or remanding the Commissioner's decision. (ECF No. 14.) On November 30, 2022, the Commissioner filed a motion for an order affirming that decision. (ECF No. 17.) On December 13, 2022, the Plaintiff filed a reply to the Commissioner's motion. (ECF No. 18.) The parties' motions are therefore ripe for decision.

## II.   APPLICABLE LEGAL PRINCIPLES

"Since 1974, disabled children under the age of eighteen from families falling under an income threshold have been entitled to receive cash benefits known as SSI under Title XVI of the Social Security Act." *K. J. v. Kijakazi*, No. 3:20-cv-1372 (SVN), 2022 WL 972442, at *1 (D. Conn. Mar. 31, 2022). "In order to qualify for SSI, 'the child's income and assets (including those imputed from the child's parents) must fall below a specified threshold,' and the 'child must be disabled' under the Act." *Id.* (quoting *McClain v. Barnhart*, 299 F. Supp. 2d 309, 314 (S.D.N.Y. 2004). A child is "disabled" if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012).

To determine whether a child meets this standard, the SSA follows a three-step sequential evaluation process. *See* 20 C.F.R. § 416.924(a). First, it analyzes whether the claimant is working

and whether that work qualifies as "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, it evaluates whether the claimant has a medically determinable impairment that is "severe" – that is, an impairment that results "in marked limitations in two domains of functioning or an extreme limitation in one domain." 20 C.F.R. § 416.924(c); 20 C.F.R. § 416.926a. "Third, if a severe impairment is found," the SSA "must consider (1) whether the impairment 'meets, medically equals, or functionally equals' the Listing of Impairments, which are, for each major body system, the types of impairments considered severe enough to cause marked and severe functional limitations; and (2) whether the impairment meets the twelve-month duration requirement." *K.J.*, 2022 WL 972442, at *1 (citing *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)). "The claimant bears the burden of proof on all of these issues." *Id.* (citing *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

In considering "functional equivalence" at Step Three, the SSA takes a "whole child" approach. Soc. Sec. Ruling 09-3P, 2009 WL 396025, at *1 (Feb. 17, 2009) ("SSR 09-3P") ("[W]e always evaluate the 'whole child' when we make a finding regarding functional equivalence, unless we can otherwise make a fully favorable determination or decision."). This approach "accounts for all of the effects of a child's impairments singly and in combination – the interactive and cumulative effects of the impairments – because it starts with a consideration of actual functioning in all settings." *Id.*, at *2. In considering functional equivalence, the ALJ must evaluate how the child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

5

When this Court reviews a final decision of the Commissioner on a child's SSI claim, it exercises an appellate function. *Cf. Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

**III.   DISCUSSION**

The Plaintiff argues that the ALJ erred at Step Three of the sequential evaluation process. (ECF No. 14-2, at 3.) As noted above, at that step the ALJ must consider whether the claimant's severe impairment "meets, medically equals, or functionally equals" one of the Listings. 20 C.F.R. § 416.924(a). In this case, the Plaintiff does not contend that her daughter's limitations meet or

medically equal a listed impairment. (*See generally* ECF No. 14-2.) But she says that the ALJ botched the "functional equivalence" analysis by "failing to build a logical bridge" between the evidence he cited and the conclusions he reached. (*Id.* at 3.) In particular, she says that the evidence does not support the ALJ's conclusions with respect to the functional equivalence domains of "acquiring and using information" and "attending and completing tasks." (*Id.* at 5, 7.) The Court will discuss each claim in turn.

      A.     **"Acquiring and Using Information"**

The Plaintiff first assails the ALJ's conclusions in the domain of "acquiring and using information." (*Id.* at 5-7.) When assessing abilities in this domain, ALJs must consider how well a child acquires or learns information, and how well the child uses the information she has learned. 20 C.F.R. § 416.926a(g). SSA rules provide a frame of reference for determining whether school-aged children "are functioning typically for their age with respect to acquiring and using information." SSR 09-3p, 2009 WL 396025, at *4-5 (Feb. 17, 2009). Considerations include whether the child "[l]earns to read, write and do simple arithmetic[;] [b]ecomes interested in new subjects and activities (for example, science experiments and stories from history)[;] [d]emonstrates learning by producing oral and written projects, solving arithmetic problems, taking tests, doing group work, and entering into class discussions[;] [a]pplies learning in daily activities at home and in the community (for example, reading street signs, telling time, and making change)[;] [u]ses increasingly complex language (vocabulary and grammar) to share information, ask questions, express ideas, and respond to the opinions of others." *Id.* at *5; *see also* 20 C.F.R. § 416.926a(g)(2)(iv).

The Plaintiff argues that the ALJ erred in his analysis of this domain. She begins by reviewing her child's poor performance in school. (*Id.* at 5-6.) She then contends that "the ALJ never summarized the results of [the Claimant's] educational testing or her grades," instead

7

"minimiz[ing] her poor academic performance by simply stating that she has 'weaknesses in mathematics performance' and a 'noted writing impairment.'" (*Id.* at 6.) She argues that this was "error for two reasons" – first, because the ALJ "patently failed" "to consider all the evidence of record," and second, because he did not "build a 'logical bridge' between the evidence and his conclusion." (*Id.*) She says that both forms of error reflect impermissible "cherry-picking" of the record. (*Id.* at 7) (citing *Smoker v. Saul*, No. 19-cv-1539 (AT) (JLC), 2020 U.S. Dist. LEXIS 80836, at *42 (S.D.N.Y. May 7, 2020)).

The Court disagrees that the ALJ engaged in impermissible cherry-picking. "The term 'cherry' picking generally refers to improperly crediting evidence that supports findings while ignoring evidence from the same source." *Sonia N.B.A. v. Kijakazi*, No. 3:21-cv-709 (TOF), 2022 WL 2827640, at * (D. Conn. July 20, 2022) (quoting *Rodriguez v. Colvin*, No. 3:13-cv-1195 (DFM), 2016 WL 3023972, at *2 (D. Conn. May 25, 2016)). It is not the proper term to apply when an ALJ "consider[s] the bad as well as the good" from a given source. *Sheila Renee H. v. Kijakazi*, No. 3:21-cv-944 (TOF), 2022 WL 4181723, at *7 (D. Conn. Sept. 13, 2022). That is what the ALJ did in this case. To be sure, he noted several evidentiary items that cut against a finding of marked or extreme limitation, including Yale New Haven records "show[ing] intact general intellect," "coherent thought process," and "logical thought content;" Cornell Scott Hill Health Center records documenting "average general intellect;" and placement in a regular as opposed to a special education program. (R. 18.) But he also cited other evidence that would *support* a finding of a high degree of limitation, including "[s]chool records show[ing] weaknesses in mathematics performance" and a "noted writing impairment." (*Id.*) "Sometimes, that which a claimant calls 'cherry-picking' 'is more accurately described as merely weighing the evidence.'"

8

*Sheila Renee H.*, 2022 WL 4181723, at *7 (quoting *Sonia N.B.A.*, 2022 WL 2827640, at *12). That is the case here.

The Plaintiff argues that the ALJ's discussion of the Claimant's school records was so cursory as to suggest that he did not consider them. (ECF No. 14-2, at 6.) The Plaintiff's brief walks through the records in detail, explaining that the Claimant received an "F" in every subject except one during the 2020-21 school year, scored "below basic" on a test of reading ability, and answered every single question incorrectly on a sixth-grade math test. (*Id.*) She suggests that in disposing of those records with a single sentence – "School records show weaknesses in mathematics performance" – the ALJ revealed that he really did not engage with the school records at all, particularly with respect to reading comprehension. (*Id.*)

But as the Commissioner points out, an ALJ does not need to cite every piece of evidence supporting disability to avoid a charge of having ignored it. (ECF No. 17-1, at 8.) "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).[2] Put differently, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (quoting

---

[2]   The Plaintiff attempts to distinguish *Brault* in her reply brief. (ECF No. 18, at 2.) She points out that *Brault* involved an objection to vocational expert testimony, and she argues that the above-quoted holding should not be read to apply to situations like this one, in which the ALJ did not provide a detailed discussion of a piece of evidence that the plaintiff considers significant. (*Id.*) But courts in this Circuit have not read *Brault* so narrowly. In *Duprey v. Berryhill*, for example, an ALJ did not explicitly address the relationship between the plaintiff's obesity and her anxiety disorder. No. 3:17-cv-607 (SALM), 2018 WL 1871451, at *14 (D. Conn. Apr. 19, 2018). Although this was ostensibly a more significant omission than the *Brault* ALJ's failure to articulate his ruling on the testimonial objection, the *Duprey* court nonetheless declined to reverse, because "an ALJ does not have to state on the record every reason justifying a decision" and is "not required to discuss every piece of evidence submitted." *Id.* (quoting *Brault*, 683 F.3d at 448). It was enough that the record reflected "consider[ation of] all of plaintiff's impairments in combination."

*Black*, 143 F.3d at 386). Indeed, the SSA's regulations do not require "adjudicators to discuss all of the considerations . . . in their determinations and decisions, only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings." SSR 09-1P, 2009 WL 396031, at *3. Here, the ALJ's opinion confirms that he reviewed the school records exhibit, Exhibit 14E.³ (R. 18.) His discussion, while not lengthy, is nonetheless sufficient to permit the Court to understand his reasoning: he thought that the data in the school records suggesting a marked limitation were outweighed by other data suggesting a lower level of limitation.

To the extent that the Plaintiff is arguing that the school records trump those other data, the Court disagrees with this argument as well. Courts have observed that a child's failure to meet "grade level" in a school subject is not dispositive of her level of limitation in the domain of acquiring and using information. In *B.J.M. v. Astrue*, for example, the court noted that "this domain considers more than just assessments of cognitive ability as measured by intelligence tests, academic achievement instruments, or grades in school." No. 3:10-cv-1720 (MRK) (WIG), 2012 WL 3727259, at *10 (D. Conn. Mar. 1, 2012) (citing SSR 09-3p). The court added that although the SSA considers "formal school evidence (such as grades and aptitude and achievement test scores) in determining the severity of a child's limitations in this domain, [it] do[es] not rely solely on such measures." *Id.* The SSA "also consider[s] evidence about the child's ability to learn and think from medical and other non-medical sources (including the child, if the child is old enough to provide such information), and [it] assesses limitations in this ability in all settings, not just

---

³ In her reply brief, the Plaintiff points out that Exhibit 14E was not in the record at the time the Claimant's file was reviewed by two non-examining state agency consultants. (ECF No. 18, at 1-2.) She argues that, "[b]ecause the prior administrative findings did not consider this probative evidence supporting the child's claim, the ALJ was required to do so" – which is true enough. (*Id.*) But she then says that "he did not" do so, and that his failure constituted reversible error. (*Id.*) The Court disagrees, because the opinion confirms that the ALJ reviewed and considered Exhibit 14E, even if he did not discuss it at the length the Plaintiff would have preferred.

school." *Id.* (citing SSR 09-3p, 2009 WL 396025, at *3)). That is what the ALJ did here; he considered the Claimant's school records (R. 18 (citing Ex. 14E)), but he also considered data about her intellectual level and thought processes from medical and other sources. (R. 18.)

On appeal, the question is not whether there was substantial evidence *for* disability; it is whether the ALJ's finding of *no* disability had substantial evidentiary support. This means that "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.") (citation omitted). Even considering the evidence cited by the Plaintiff, there was substantial evidence for the ALJ's determination of a less than marked limitation in the domain of acquiring and using information. (*See* R. 18.) His notation of "intact general intellect" was supported by the Yale New Haven notes. (R. 18, 368, 391.) His conclusions about "coherent thought process" and "logical thought content" were likewise supported by the Claimant's own therapist's records. (R. 18, 369.) Yet another treating therapist opined that the Claimant "was able to articulate her thoughts without difficulty and engaged in dialogue with ease." (R. 305.) The ALJ's consideration of the Claimant's language abilities, thought articulation, and dialogue skills support a less than marked limitation in this domain, even allowing that she had failing or near failing grades. *See Donna B. o/b/o C.B. v. Comm'r of Soc. Sec.*, No. 19-CV-1163-FPG, 2021 WL 2592906, at *4 (W.D.N.Y. June 24, 2021) (upholding an ALJ's "less than marked" limitation determination in this domain based in part upon evidence that the claimant attended regular education classes and could "follow and understand age-appropriate directions, ask questions, and request assistance in an age-appropriate manner").

The ALJ's decision is supported by substantial evidence, and accordingly it must be upheld. *See Johnson v. Astrue*, 563 F. Supp. 2d at 454. Merely disagreeing with the ALJ's findings does not warrant remand. *Traci R. o/b/o E.A.O.B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-607 (DNH) (TWD), 2022 WL 4354367, at *6 (N.D.N.Y. Sept. 20, 2022), *report and recommendation adopted sub nom. Traci May R. on behalf of E.A.O.B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-607, 2022 WL 12318225 (N.D.N.Y. Oct. 20, 2022) ("Under the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position[,]" as "substantial evidence means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" (internal quotation marks and citation omitted)).

**B.     "Attending and Completing Tasks"**

The Plaintiff next attacks the ALJ's conclusion that the Claimant had a "less than marked" limitation in the domain of "attending and completing tasks." (ECF No. 14-2, at 7-10.) This domain considers how well a child can focus and maintain her attention, and how well she begins, carries through, and finishes her activities, including the pace at which she performs activities and the ease with which she changes them. 20 C.F.R. § 416.926a(h). SSA rules provide a frame of reference for determining whether school-aged children "are functioning typically for their age with respect to attending and completing tasks." SSR 09-4p, 2009 WL 396033, at *4-5 (Feb. 19, 2009). Considerations include whether the claimant "[f]ocuses attention in a variety of situations in order to follow directions, completes school assignments, and remembers and organizes school-related materials[;] [c]oncentrates on details and avoids making careless mistakes[;] [c]hanges activities or routines without distracting self or others[;] [s]ustains attention well enough to participate in group sports, read alone, and complete family chores[;] [and] [c]ompletes a transition

12

task without extra reminders or supervision (for example, changing clothes after gym or going to another classroom at the end of a lesson)." *Id.*, at *5; *see also* 20 C.F.R. § 416.926a(g)(2)(iv).

The ALJ discussed this domain at Step Three. He started by noting that the Claimant "began treatment at Yale New Haven in October 2020 due to trauma symptoms related to witnessing her grandmother's death." (R. 19.) He noted that the Claimant "presented with increased forgetfulness and deterioration of academic performance." (*Id.* (citing R. 392)). Nonetheless, her "[m]ental status examination findings were for intact memory and cooperative behavior." (*Id.* (citing R. 391)). Moreover, the record contained "consistent notations for age-appropriate attention which required some support." (*Id.* (citing R. 328)). Taking these considerations into account, he concluded that "[t]he claimant has a less than marked limitation in attending and completing tasks." (*Id.*)

The Plaintiff's principal objection is that there was a mountain of contrary evidence. She argues that the record was replete with "[e]vidence of trauma symptoms, increased forgetfulness, deterioration in academic performance, as well as consistent attention that required support." (ECF No. 14-2, at 8.) She adds that "the record shows that in March 2021, the child had 58 missing [school] assignments, and was not making time to work on them." (*Id.* at 9.) Furthermore, "the record shows the child suffers from daytime sleepiness due to her poor sleep; she has slept through a counseling session following a night of not sleeping." (*Id.*) The Plaintiff argues that "there is no explanation why this evidence is outweighed by" the contrary evidence cited by the ALJ, such as "intact memory and cooperative behavior." (*Id.* at 8.)

This argument fails because there was substantial evidence for the ALJ's conclusion – and because there was, it does not matter if there was *also* substantial evidence for the Plaintiff's position. As noted above, if there is "substantial evidence to support the Commissioner's final

decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Johnson v. Astrue*, 563 F. Supp. 2d at 454. In this case, the ALJ cited a mental status examination note from a treating therapist, recording that the Claimant demonstrated "age-appropriate attention" and required only "some support." (R. 18 (citing R. 328)). Essentially the same notation appears in nearly two dozen mental status examination reports stretching over a period of almost four months, on dates both before and after the alleged disability onset date. (R. 304, 306, 310, 317, 325, 331, 334, 341, 344, 348, 354, 357, 360, 362, 365, 368, 371, 375, 379, 391.) Similarly, the ALJ noted a "[m]ental status examination finding[]" of "intact memory and cooperative behavior" (R. 18 (citing R. 391)), and many other, similar notations appear in the record as well. (R. 304, 307, 311, 318, 325, 328, 331, 335, 341, 345, 348, 354, 357, 360, 363, 365, 368, 371, 376, 379, 386.) The Plaintiff again charges the ALJ with cherry-picking the record (ECF No. 14-2, at 9-10), but this charge cannot stick when the evidence supporting the decision is this voluminous, and when the ALJ considers and cites both favorable and unfavorable evidence. Here, the ALJ noted not only that the Claimant had age-appropriate attention and an intact memory, but also that she "presented with increased forgetfulness and deterioration of academic performance." (R. 19.) In short, he considered both "the good and the bad." *Sheila Renee H.*, 2022 WL 4181723, at *7.

The Plaintiff repeatedly urges the Court to hold that the ALJ failed to "build a logical bridge" between the evidence he cited and the conclusions he drew from it. (*E.g.,* ECF No. 14-2, at 8.) As a legal matter, the Plaintiff is correct that an "ALJ must build an accurate and logical bridge from the evidence to his conclusion to enable a meaningful review." *Tami B. v. Comm'r of Soc. Sec.*, No. 3:21-cv-1460 (JCH), 2023 WL 2403898, at *7 (D. Conn. Mar. 7, 2023) (quoting *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010)). But this principle

supplies a basis for remand only when the link between evidence and conclusion is so opaque as to frustrate review. In *Tami B.*, for example, an ALJ concluded that a sixty-two-year-old obese woman with left shoulder adhesive capsulitis could perform medium work – which requires, among other things, crouching and crawling and carrying twenty-five pounds – even though the record contained no evidence that she could do so. *Id.* at *8. Citing the "logical bridge" principle, Judge Hall remanded the case because "the ALJ's decision was not thoroughly explained in a manner that allows the court to be comfortable that it was supported by substantial evidence." *Id.* Yet that is not the case here. As discussed above, the ALJ's decision is sufficiently clear for review, and it had substantial evidentiary support.

### IV.  CONCLUSION

For the reasons stated above, the Court concludes that the ALJ's decision was supported by substantial evidence and free of legal error. Therefore, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) is **DENIED**. The Commissioner's Motion for an Order to Affirm the Decision (ECF No. 17) is **GRANTED**.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. (ECF No. 7.) Appeals may be made directly to the United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk of the Court is respectfully directed to enter judgment in favor of the Defendant, and to close this case.

So ordered this 29th day of September 2023, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge